**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL J ASCENZI, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL NO. 3:CV-05-1656 |
| v. | : |
| | : (JUDGE VANASKIE) |
| DR. R. DIAZ, ET AL., | : |
| | : |
| Defendants. | : |

**M E M O R A N D U M**

I.  **Introduction**

On August 15, 2005, Plaintiff, Michael Ascenzi, an inmate presently housed at the Retreat State Correctional Institution ("SCI-Retreat"), Hunlock Creek, Pennsylvania, filed this action pursuant to 42 U.S.C. § 1983. An Amended Complaint, and supporting brief, were filed on December 1, 2005. (Dkt. Entries 14 and 15.) The named defendants, all of whom are represented by separate counsel, are: Dr. Gunnar Kosek, a physician at the Luzerne County Prison; Dr. Renato Diaz, a contract physician at SCI-Retreat; and Joseph P. Mataloni, SCI-Retreat's Corrections Health Care Administrator ("CHCA"). Plaintiff alleges that Defendants were deliberately indifferent to his need for narcotic pain medications and corrective surgery for two herniated cervical discs while incarcerated at the Luzerne County Prison, and then at SCI-Retreat. Ascenzi also claims the SCI-Retreat defendants were deliberately indifferent, on two

separate occasions, to his skin infections.  As relief, Ascenzi seeks an orthopedic consultation and surgery for his neck.  Plaintiff also seeks compensatory and punitive damages.

Presently pending are the Defendants' individual Motions to Dismiss.  All motions have been briefed, and are ripe for disposition.  For the following reasons, the motions will be granted.

## II.     Statement of Facts

Unless otherwise stated, the following facts are gleaned from Plaintiff's Amended Complaint.  (Dkt. Entry 14.)   In February 2004, prior to his incarceration at the Luzerne County Prison ("LCP"), Ascenzi injured his neck while working at his former place of employment.  Ascenzi's personal physician, Dr. Alex Jung, prescribed Endocet, a narcotic analgesic, three times a day, to treat Plaintiff's discomfort due to his two herniated cervical discs.  Plaintiff was scheduled to see Dr. Prosper, a neurosurgeon at Geisinger Hospital, on August 10, 2004, for a consultation regarding the herniated discs.

Ascenzi was incarcerated prior to his appointment with Dr. Prosper.  From July 21, 2004, until December 21, 2004, Plaintiff was housed at the LCP.  He was examined by Dr. Gunnar Kosek upon his arrival.  Ascenzi told Dr. Kosek of his various symptoms associated with his herniated cervical discs:  popping, stiffness, twitching, pain, cracking, migraine headaches, itchy sensations, and tension, all of which are exacerbated by cold or wet weather.  Dr. Kosek refused to prescribe Endocet or surgery for Ascenzi as requested.  Instead, Dr.

Kosek prescribed Flexeril (a muscle relaxant) and Ultram (a narcotic like pain reliever) for Ascenzi from July 23, 2004 until July 27, 2004.  From July 28, 2004, to August 6, 2004, Dr. Kosek prescribed Plaintiff Piroxicam, a nonsteroidal anti-inflammatory drug ("NSAID").  These medications did not provide Ascenzi with adequate pain relief.  Dr. Kosek then prescribed Elavil, from August 3, 2004 through October 30, 2004.  On November 28, 2005, Dr. Kosek increased Plaintiff's Elavil to 100 mg "for sleep."  Plaintiff remained on the Elavil, a psychotropic medication, until his transfer to SCI-Retreat.

Plaintiff arrived at SCI-Retreat on December 21, 2004.  Upon his reception, he was confined in the medical unit for 18 days until his blood test results came back.  At this point, Ascenzi's Elavil was discontinued, and he requested that it be restored.  When he signed up at sick call to request a prescription for Elavil, he was assured by Dr. Steve Evans (non-defendant), "the [he] would be treated fairly."  At some point in January 2005, Plaintiff was examined by Dr. Renato Diaz.  Ascenzi advised Dr. Diaz of his family doctor's prescription of Endocet for pain for the herniated cervical discs, as well as his referral to a Geisinger neurosurgeon for the purpose of discussing surgery.  After Ascenzi expressed concerns to Dr. Diaz about the appropriate treatment for his neck injury, Dr. Diaz "wanted to cut off [his] 100 mg of Elavil."  Plaintiff told him "no way, that's crazy."  Dr. Diaz then recommended therapeutic massages that Ascenzi could perform himself.  When Plaintiff said he didn't know how, Dr. Diaz told him to learn.  Dr. Diaz denied Ascenzi's request for pain medication and surgery.

At some point Dr. Evans (non-defendant), "did a few compression exercises to adjust [Ascenzi's] neck" and prescribed him Elavil for sleep. Dr. Evans allegedly told Ascenzi that "the medical department hates to spend money!"

Ascenzi told Dr. Diaz that the Elavil was not alleviating his pain. Dr. Diaz then prescribed Ibuprofen 600 mg twice daily, Acetaminophen 325 mg daily, and Cyclobenzaprine (a muscle relaxant). Dr. Diaz stated that because Plaintiff had "liver damage," he could not prescribe additional pain medications for him. Dr. Diaz also refused Ascenzi's request for narcotic pain killers due to the possibility that Plaintiff might develop a dependence on the medication. Other medications prescribed by Dr. Diaz for Plaintiff's diabetes and high cholesterol included Gemfibrozil, Enalapril, and Glipizide. Ascenzi contends Dr. Diaz is poisoning him as these medications are "very hard on the liver" and thin his blood.

In February 2005, Plaintiff signed up for sick call to show the physician's assistant ("PA") an infection he had contracted. The PA and Dr. Diaz "tried to convince" Plaintiff that he was suffering from a spider bite. Ascenzi "had a disagreement with about what [he] actually had." Plaintiff believes that had a staphylococcus infection. Plaintiff was treated with antibiotics. Plaintiff claims Dr. Diaz "lied to [him]" about being bitten by a spider.

On May 13, 2005, Plaintiff again complained of a skin infection. He was prescribed Metronidazole, Sulfatrim and a 10 day regimen of antibiotics. In May 2005, Ascenzi was told he had osteoporosis arthritis in his back and that he is losing bone mass. Dr. Diaz was

-4-

"supposed to give [him] vitamin D, ... but that never happened." Dr. Diaz was also supposed to assign him to a lower bunk, but that too never transpired.

On July 7, 2005, Dr. Diaz diagnosed Ascenzi as suffering from a pinched nerve in his neck. According to Ascenzi, "[a]ll Dr. Diaz had to do is to either set [him] up for surgery, or prescribe pain medication."

"Every chance [Ascenzi] got," he spoke to CHCA Mataloni about "how he supervises his medical staff." Plaintiff filed seven institutional grievances pertaining to the "poor medical treatment he was receiving." Ascenzi advised Mataloni that he was being charged for his twice daily Ibuprofen, and about his (and other inmates') staphylococcus infections. Even after the Bureau of Health held a meeting at the facility concerning staphylococcus infections, "Mataloni refuse[d] to believe there is a rash of breakouts in this institution." A staff member purportedly told Ascenzi that the officer's union was also concerned about contracting or contaminating family members with methicillin-resistant Staphylococcus aureus, a drug resistant form of staphylococcus. Mataloni is named as a defendant in this action "because he has failed to instruct his staff properly so they may treat an injury the way it should be."

On September 14, 2005, Plaintiff was given a direct order to move his property to an upper bunk so another inmate could have the lower bunk. Six days later Ascenzi was moved to a different cell. On October 10, 2005, Plaintiff had xrays done which indicated the spread of arthritis to his spine.

**III.     Standard of Review**.

When evaluating a motion to dismiss, the court must accept as true all material allegations of the complaint.  See Spruill v. Gillis, 372 F.3d 218, 223 (3d. Cir. 2004).  Moreover, *pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  In this regard, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002).

To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode).  Liability may not be imposed under § 1983 on the traditional standards of respondeat superior.  Rode, 845 F.2d at 1207-08.  Thus, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they

-6-

knew of, participated in or acquiesced in such conduct." Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)).  A doctor under contract to a state to provide medical services to prisoners is considered to be acting under color of state law, West v. Atkins, 487 U.S. 42, 54 (1988), and the principles just mentioned apply in that context as well. Hetzel v. Swartz, 909 F. Supp. 261, 264 (M.D. Pa. 1995).

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372

F.3d 236.

With these standards in mind, I will address the merits of Ascenzi's claims against each defendant.

## IV.     Discussion.

### A.     Claims of Deliberate Indifference Against CHCA Mataloni.

Mataloni is SCI-Retreat's Health Care Administrator. He is not a physician. He is not charged with prescribing medication or providing Ascenzi medical care. Mataloni lacks any medical authority to dictate the course of Ascenzi's treatment.

Based on the averments in the Amended Complaint, Mataloni was aware that Ascenzi was being treated by the institution's physician for his various ailments, including skin infections and pain. Under these circumstances, Mataloni cannot be considered deliberately indifferent for failing to second-guess Ascenzi's treating physician's assessment of his medical needs. Further, although Ascenzi disagrees with the institution's requirement that he pay for his Ibuprofen, he does not suggest that Mataloni ignored any request for a waiver of this fee due to poverty. Ascenzi does not aver he was denied medical care, or the ability to obtain prescribed medication or treatment, based on his indigent status. Accordingly, Ascenzi has not established an Eighth Amendment violation with respect to CHCA Mataloni. Durmer, 991 F.2d at 69.

**B.     Claims of Deliberate Indifference Against Dr. Kosek and Dr. Diaz**.

Assuming, without deciding, that Plaintiff's neck ailment is serious in the constitutional sense, the Amended Complaint clearly illustrates that Ascenzi received medical attention and pain medication for this pain and other medical conditions at both LCP and SCI-Retreat. Thus, his allegations against Dr. Kosek and Dr. Diaz present, at best, claims of negligence, not deliberate indifference to his serious medical need.

The fact that neither Dr. Kosek nor Dr. Diaz agreed with Ascenzi's family physician's decision to prescribe Endocet for pain relief does not establish an Eighth Amendment claim.   See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). The Amended Complaint is clear that Ascenzi was provided some treatment for his neck complaints by both physician Defendants. Dr. Kosek briefly prescribed Ultram and Flexeril for Ascenzi, and then changed Plaintiff's pain medication to Piroxicam. He also prescribed Elavil for Plaintiff and adjusted his dosage when required. Likewise, Dr. Diaz prescribed Ibuprofen, Acetaminophen, and, at some point, Cyclobenzaprine for Ascenzi's pain. Ascenzi also received Elavil while at SCI-Retreat. In light of the facts alleged in the Amended Complaint, the refusal to prescribe narcotic pain medication or refer Ascenzi for surgery does not rise to the level of a constitutional violation. At most, it suggests a claim of medical negligence. Durmer, 991 F.2d at 69.

The fact that it took Dr. Diaz eight months to diagnose Ascenzi with a pinched nerve,

again, is at most, negligence, and not deliberate indifference to his serious medical needs,

especially in light of Dr. Diaz's prescription of various medication for pain, self administered

therapeutic massage, and diagnostic x-rays.[1]  The fact that after obtaining x-rays, Dr. Diaz

ultimately concluded Plaintiff suffered from a pinched nerve only underscores Dr. Diaz's

continued effort to exercise professional medical judgment with respect to Ascenzi's

complaints.  The delay in reaching this conclusion, again, at best, constitutes negligence, not

deliberate indifference.  Likewise, Dr. Diaz never ignored Ascenzi's complaints of skin infection.

On each occasion Ascenzi was given a course of antibiotics and other treatment.  The parties

simply disagreed as to the origin of the infections.

Clearly, Plaintiff disagrees with the medical care he has received from both doctors.

Ascenzi would prefer surgery or stronger pain medication than prescribed by Drs. Kosek and

Diaz.  Ascenzi's pleadings strongly argue these are the only options to properly treat his

herniated discs.  The physicians, however, exercising professional judgment, disagreed with

Ascenzi and administered the care they considered necessary and appropriate.  Plaintiff's

disagreement with this care does not state an Eighth Amendment claim of deliberate

indifference to a serious medical need.

---

[1] Although Ascenzi avers that Dr. Diaz has stated "[y]ou'll get no pain medication from me," (Dkt. Entry 51, Plaintiff's Answer to Dr. Diaz's Reply Brief in Support of his Motion to Dismiss, p. 5), the Amended Complaint clearly reports that he received Ibuprofen, Acetaminophen and Cyclobenzaprine from Dr. Diaz.  (Dkt. Entry 14, Amended Complaint at ¶ 13 and ¶ 16.)

Nor do Ascenzi's claims that Dr. Diaz is prescribing medication for his diabetes and cholesterol that have adverse side effects on his liver rise to the level of an Eighth Amendment claim. Dr. Diaz, using his medical judgment, prescribed several medications to treat Ascenzi's specific conditions. Given the facts alleged by Plaintiff, Dr. Diaz used his professional knowledge to select the medication to prescribe for Ascenzi. Again, Ascenzi disagrees with the doctor's choice, and suggests his own proposed list of "the right type of medication to apply to an individual with [his] ailments." (See Dkt. Entry 34, Plaintiff's Answer to Defendants Brief in Support of his Motion to Dismiss, p. 11.)

The physicians' failure to provide Ascenzi's preferred course of treatment or drug of choice does not establish an Eighth Amendment claim against Dr. Kosek or Dr. Diaz. The Amended Complaint shows that they did not ignore his complaints, but exercised professional judgment in providing him with some form of treatment for each complained of ailment. Plaintiff's disagreement with the appropriateness of the doctors' chosen plan of treatment may present a claim of medical negligence, but does not rise to the level of deliberate indifference to serious medical needs. Durmer, 991 F.2d at 69.

Furthermore, based on the extensive factual pleading set forth in Ascenzi's Amended Complaint as to the care he has received from both Dr. Kosek and Dr. Diaz, leave to file a curative amended complaint against any of the named Defendants would be futile.

**V.     Conclusion**

In sum, Ascenzi has failed to state a claim of deliberate indifference to a serious medical need against Mataloni, Dr. Kosek or Dr. Diaz.  For the reasons stated, each defendant's motion to dismiss for failure to state a viable claim for relief will be granted.  In light of the dismissal of this action, Plaintiff's pending discovery motions (Dkt. Entries 52 - 55) will be dismissed as moot.  An appropriate Order follows.

                                                                **s/ Thomas I. Vanaskie**
                                                                Thomas I. Vanaskie
                                                                United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL J ASCENZI,** | : |
| | : |
| Plaintiff, | : |
| | : **CIVIL NO. 3:CV-05-1656** |
| v. | : |
| | : **(JUDGE VANASKIE)** |
| **DR. R. DIAZ, ET AL.,** | : |
| | : |
| Defendants. | : |

# O R D E R

**NOW**, this **30th** day of **MARCH, 2007**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Dr. Diaz's Motion to Dismiss (Dkt. Entry 20), Mr. Mataloni's Motion to Dismiss (Dkt. Entry 21), and Dr. Kosek's Motion to Dismiss (Dkt. Entry 35) are **GRANTED**.

2. Plaintiff's pending discovery motions (Dkt. Entries 52 - 55) are **DISMISSED.**

3. The Clerk of Court is directed to mark this matter **CLOSED.**

                                                      **s/ Thomas I. Vanaskie**
                                                      Thomas I. Vanaskie
                                                      United States District Judge